UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMETREE WYNN, Individually, | ) |
| and as the Mother of DREASJON IRE REED, and as | ) |
| Representative of the Estate of DREASJON IRE REED | ) |
| (deceased), | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF INDIANAPOLIS, | ) |
| INDIANAPOLIS METROPOLITAN POLICE | ) |
| DEPARTMENT, CHIEF OF POLICE RANDAL TAYLOR | ) |
| DEPUTY CHIEF OF POLICE KENDALE ADAMS, OFFICER | ) |
| DE'JOURE MARQUISE MERCER and OFFICER STEVEN | ) |
| SCOTT (in their Individual and Official Capacities). | ) |
| | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Now comes Demetree Wynn (hereinafter, "Plaintiff" or "Wynn") as an

individual and as the biological parent of Dreasjon Ire Reed, and as the personal

representative of the Estate of Dreasjon Ire Reed, deceased, by and through her

attorney, Swaray E. Conteh, The Law Firm of Fatima Johnson, complains of Defendants,

Indianapolis Metropolitan Police Department (IMPD), the City of Indianapolis, Chief of

Police Randal Taylor, Deputy Chief of Police, Kendale Adams, Officer De'Joure

Marquise Mercer, and Officer Steven Scott (hereinafter, "Defendants"), as follows:

1

## INTRODUCTION

1. This is an action against Defendants, and in particular De'Joure Marquise Mercer (Officer Mercer), whose use of excessive and deadly force resulted in the unlawful shooting death of Dreasjon Ire Reed ("Reed" or "Dreasjon Ire Reed") under color of law in violation of Reed's individual rights under the Fourth Amendment of the United States Constitution and in violation of Reed's rights pursuant to 42 U.S.C. §1983. At the time of the shooting, Reed presented no immediate threat to Officer Mercer or anyone else.

2. Defendants, IMPD and the City of Indianapolis, failed to properly train, supervise, screen, discipline, transfer, counsel, or otherwise control officers who were known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of such acts. The IMPD and the City of Indianapolis had a duty but failed to implement and/or enforce policies, practices, and procedures for IMPD officers that respected Reed's constitutional rights to assistance and protection. The IMPD's and the City of Indianapolis's failure to implement the necessary policies and adequately supervise and discipline Officer Mercer and Officer Steven Scott (Officer Scott) and the implementation of unconstitutional policies caused Reed's unwarranted and excruciating physical and mental anguish and death. Officer Mercer and Officer Scott consciously disregarded the rights of Plaintiff and Reed, knowing that the IMPD and the City of Indianapolis would approve and ratify their actions. A few minutes after the gruesome shooting death of Reed, Officer Scott was overheard saying, with callous disregard for the life of

2

Reed and feelings of Wynn, "looks like it's going to be a closed casket, homie," referring to Reed's mutilated corpse. For these civil rights violations and other causes discussed herein, Plaintiff seeks answers and compensation for damages and for the wrongful death of Dreasjon Ire Reed.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 USC §1983 *et seq*, 28 U.S.C. §§ 1331 and 1343 (a); and the Constitution of the United States and supplemental jurisdiction of the state law claims. Plaintiff previously filed notice pursuant to the Indiana Tort Claim Act, Indiana Code §34-13-3-0.1 *et seq*.

4. Venue is proper in this District under 28 U.S.C. §1391 (b) in that all, or a substantial part of the acts and omissions forming the basis of these claims, occurred in the Southern District of Indiana and arose from the unlawful shooting death of Reed by Officer Mercer and other officers of the IMPD and the City of Indianapolis.

## PARTIES

5. Wynn is resident of the City of Indianapolis, Marion County, State of Indiana. Wynn is the biological mother of Reed, deceased.

6. Wynn sues on behalf of herself and as the personal representative of the Estate of Dreasjon Ire Reed, deceased.

7. IMPD is the law enforcement agency for the City of Indianapolis, Indiana. IMPD was created on January 1, 2007, by consolidating the Indianapolis Police Department and the law enforcement division of the Marion County Sheriff's office. IMPD has its principal address at 50 North Alabama Street, Indianapolis, Indiana.

8.  The City of Indianapolis, Indiana is a municipality duly incorporated under the laws of the State of Indiana and is the employer and principal of defendants Chief of Police Randal Taylor (Chief Taylor); Deputy Chief of Police, Kendale Adams (Chief Adams); Officer Mercer and Officer Scott; and other police officers of the City of Indianapolis referred to in this Complaint.  The City of Indianapolis is responsible for the policies, practices, and customs related to its maintenance of a police force.

9.  Chief Taylor was at all times relevant hereto, a police officer employed by the City of Indianapolis and IMPD, acting within the scope of his employment with IMPD and the City of Indianapolis and under color of law.  Chief Taylor is sued in his individual and official capacity.

10.  Chief Adams was at all times relevant hereto, a police officer employed by the City of Indianapolis and IMPD, acting within the scope of his employment with IMPD and the City of Indianapolis and under color of law.  Chief Adams is sued in his individual and official capacity.

11.  Officer Mercer was at all times relevant hereto, a police officer employed by the City of Indianapolis and IMPD, acting within the scope of his employment with IMPD and the City of Indianapolis and under color of law.  Officer Mercer is sued in his individual and official capacity.

12.  Officer Scott was at all times relevant hereto, a police officer employed by the City of Indianapolis and IMPD, acting within the scope of his employment with IMPD and the City of Indianapolis and under color of law.  Officer Scott is sued in his individual and official capacity.

## FACTS

13. On May 6, 2020, Officer Mercer shot and killed Dreasjon Ire Reed in the vicinity of Michigan Road and West 62nd Street, in Indianapolis, Indiana. Officer Mercer first shot Reed with his Electronic Control Device (ECD) also known as a taser gun. Reed instantly fell to the ground. While Reed was convulsing on the ground, Officer Mercer fired multiple shots at Reed at point blank range causing Reed's immediate and gruesome death. Dreasjon Reed was only 21 years old.

14. To cover up this heinous act, Officer Mercer falsely claimed that Reed shot at him.

15. Reed was born on June 16, 1998, in Indianapolis, Indiana. Reed graduated from Lawrence Central High School, attended Indiana State University, and subsequently enlisted in the U.S. Airforce. Reed was discharged from the Airforce on June 22, 2017.

16. Following Reed's violent death on May 6, 2020, IMPD Assistant Chief Chris Bailey (Officer Bailey) spoke to several news outlets, including USA Today and CBS's Indianapolis affiliate, WTTV. Officer Bailey's account of the events leading to the shooting death of Dreasjon Ire Reed further perpetuated Officer Mercer's false narrative.

17. Officer Bailey informed the press that events leading to Reed's tragic death began around 6:00 p.m. on Wednesday May 6, 2020 on Interstate 65 around West 30th Street. Officer Bailey alleged that around the same time and place, Chief Adams noticed a gray Toyota Corolla being driven recklessly as the driver exited the highway.

Furthermore, Officer Bailey alleged that Chief Taylor was also driving on the same highway just behind Chief Adam's unmarked police cruiser.  It is unclear whether Chief Adams or Chief Taylor were acting in their official capacities as IMPD officers and whether either or both could have initiated a traffic stop.

18.  Officer Bailey reported the news media that Officer Adams "called for additional help and began a pursuit with the Corolla" because of the alleged reckless driving on the part of the driver of the vehicle.  Chief Adams and Chief Taylor also joined the pursuit.  According to a subsequent but unsubstantiated police press statement, the driver of the Toyota Corolla almost struck another car.

19.  At some point, Reed realized that police were following his automobile.  At that point, Reed positioned the camera on his cellular phone and activated his Facebook account to begin live streaming the police pursuit.  The Facebook video was shared across multiple platforms on social media and subsequently viewed by millions of people.

20.  The Facebook video of the driver of the Toyota Corolla pursued by IMPD and its agents was Dreasjon Ire Reed.  The Toyota Corolla was the property of Reed's friend.  Reed was in lawful possession of the automobile.

21.  The Facebook video also showed Reed in a nonmenacing mood as he drove the vehicle.  The Facebook video showed that Reed was in possession of two (2) cellular telephones.  Reed used one cellular phone to play music in the vehicle and the other cellular phone to live stream the unfolding events on Facebook Live.  The Facebook Live video also showed a white T-shirt on the passenger seat.

22.  Based on information Officer Bailey provided to the press, after 10 minutes of the chase, a police sergeant ordered the pursuit to end because of how fast the "suspect was driving."  However, the officers continued to pursue Reed.

23.  For a moment, Reed believed that the police were no longer following his vehicle.  However, as Reed approached West 62nd Street heading south on North Michigan Road, he noticed that the police were still chasing him.  Reed decided to park the vehicle at the back of the ACE Lock & Key building on West 62nd Street and instead run away on foot because as he said, "I'm not going to jail today."  When Reed exited his vehicle, he could be seen with a white T-shirt in his left hand and phones in his right hand as he ran away.  Officer Mercer came upon the already parked vehicle behind the ACE Lock & Key, yet Officer Mercer continued to pursue Reed for no just reason.

24.  Seconds after Reed exited his vehicle and began to run, Officer Mercer deployed his ECD and struck Reed.  Reed immediately fell on the ground and began to convulse.  Officer Mercer immediately began firing multiple shots at Reed with his firearm.  Reed died instantly.

25.  At no time prior to fatally shooting Reed did Officer Mercer command Reed to drop any weapon or warn Reed that he [Officer Mercer] was going to shoot.

26.  None of the police officers involved in the chase did anything to intervene or prevent the fatal shooting of Reed.

27.  The Facebook Live recording captured the sounds of the shooting and the conversations of the police officers immediately thereafter.  Unaware that their conversation was being captured on video and after observing the gruesomeness of the

wounds on Reed's body, Officer Scott remarked, "I think it's going to be a closed casket, homie."

28.  Soon thereafter, the officers became aware that their conversations were being recorded.  At this point, the officers began to formulate a theory about what transpired just prior to the fatal shooting of Reed.  Their theory was contrary to the objective evidence.

## CITY OF INDIANAPOLIS AND IMPD POLICIES AND PRACTICES

29.  The City of Indianapolis has a longstanding record of not providing IMPD officers with adequate training and not preventing excessive use of force against racial minorities.  As a result of the lack of training and the official customs, policies, and inadequate training, Officer Mercer violently and wrongfully shot and killed Dreasjon Ire Reed.

30.  The City of Indianapolis and IMPD's deficient policies and practices regarding police shootings of civilians are only becoming worse.  These policies and practices include the failure to provide meaningful training and supervision regarding the use of non-lethal force and the use of deadly force, such as force used against people fleeing from police officers; inadequate post-incident review; and a lack of meaningful discipline for excessive force, including the use of unjustified deadly force.  The City of Indianapolis's rate of police shootings of civilians is staggeringly high. In 2013, for example, IMPD officers shot and killed nearly as many civilians as police in New York City, whose population is nearly ten times greater than that of Indianapolis.

31.   Unlike some of their counterparts, the City of Indianapolis and IMPD have failed to adopt reforms to reduce unnecessary and unjustified police shootings despite notice of their occurrence at disturbing rates. Some examples follow.

32.   In 1987, Indianapolis police officers claimed that Michael Taylor suffered a self-inflicted gunshot wound while handcuffed. It took almost a decade for a jury to award Taylor's family over $3 million dollars in damages. However, the officers were not found to be criminally liable and remained under the employ of the City of Indianapolis.

33.   In 2015, Officers Carlton Howard and Michael Dinnsen shot and killed Aaron Bailey after a brief car pursuit that ended with the officers shooting Bailey, who was unarmed. Bailey's family reached a $650,000 civil settlement with the city in 2018. The officers were not criminally charged or fired from IMPD.

34.   On May 6, 2020, in just under eight hours, IMPD not only killed Dreasjon Reed but also shot and killed McHale Rose. Also, within that eight-hour period, an IMPD officer struck Ashlynn Lisby with car, killing her and her unborn child.  It took over a month of a large public outcry for IMPD to release the identity of the officers involved in the shooting deaths of Reed and Rose.

35.   When excessive force incidents occur, IMPD rarely undertakes a meaningful review and almost never disciplines any officers.  IMPD's own professional standards division has previously found that "the current system of managing and ensuring police accountability in the IMPD is significantly flawed, if not broken."

36.  IMPD's failure to train, supervise, review, and discipline police officers with regard to unjustified police shootings – in the face of widespread de facto policies permitting the use of excessive deadly force – reflect deliberate indifference to Indianapolis residents and were the moving force behind Reed's tragic and unnecessary death.

37.  IMPD failed to provide adequate training to Officer Mercer, and other IMPD police officers in the use of ECD's and the use of deadly force.

38.  IMPD failed to provide adequate training to Chief Taylor, Chief Adams, Officer Mercer and other IMPD police officers on appropriate methods and techniques to initiate and terminate a vehicle pursuit.

39.  IMPD failed to provide adequate training to Officer Mercer and other IMPD police officers on appropriate methods and techniques to initiate and terminate a foot pursuit.

40.   The Defendants knew or should have known that the training referred to in paragraphs 29 through 39 of this Complaint was inadequate or nonexistent.

41.  Upon information and belief, the IMPD has not implemented policies and procedures to aggressively curtail death and/or injuries as a result of the improper use of deadly force and have not disciplined officers involved in the cover-up of crimes committed by police officers.

## COUNT 1

### Violation of 42 U.S.C. § 1983 (Excessive Use of Force)

Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

42.   The actions of the Defendant Officer Mercer and others in fatally shooting Dreasjon Ire Reed, without just cause, constituted the use of excessive force in violation of Dreasjon Ire Reed's rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries and death alleged in this Complaint.

43.   The deadly force used by Office Mercer and others was unnecessary, excessive and unreasonable under the circumstances, as Dreasjon Ire Reed was running away from Officer Mercer and did not pose an immediate threat to the safety of the officer.

44.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Reed's constitutional rights.

45.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

46.   The individual defendants' misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Indianapolis in that:

a. As a matter of both policy and practice, the IMPD directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train and supervise its

officers regarding the use of deadly force on fleeing suspects, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately review and discipline prior instances of similar misconduct, thereby leading Indianapolis Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Reed. Specifically, Indianapolis Police Officers accused of excessive force can be confident that those accusations will not be investigated in earnest by the IMPD, and that the IMPD will decline to recommend discipline even where the officer has engaged in excessive force;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, IMPD officers abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the IMPD makes findings of wrongdoing in a disproportionately small number of cases;

d. City policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the IMPD. Police officers routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so; and,

e. The City of Indianapolis has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

f. The City of Indianapolis fails to utilize records of allegations of excessive force against its officers to identify and respond to patterns of misconduct by its officers.

47.  As a result of the Defendants' misconduct described in this Count, the Estate of Reed has suffered injury, including physical harm, mental distress, and death.

**WHEREFORE,** pursuant to 42 U.S.C. <u>§ 1983, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, plus costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.</u>

**COUNT II**

**<u>Violation of 42 U.S.C. § 1983 (Failure to Train)</u>**

Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

48.  Officer Mercer and other police officers at the scene of the shooting incident were acting under color of law and acting pursuant to the customs practices and policies of the City of Indianapolis and IMPD with regards to the use of deadly force as authorized and/or ratified by the City of Indianapolis and IMPD.  The City of Indianapolis and the IMPD failed to provide proper training to its officers in the use of deadly force.  Furthermore, the City of Indianapolis and IMPD failed to provide proper training to its officers on how to deal with alleged suspects during either vehicle or foot

pursuits.  As a result of these failures, Dreasjon Ire Reed was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, and in violation of 42 U.S.C. § 1983.

**WHEREFORE,** pursuant to 42 U.S.C. § 1983, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, plus costs of this action, attorney's fees and whatever additional relief this Court deems equitable and just.

## COUNT III

### State Law Wrongful Death Claim; Intentional or Reckless Battery

49.  Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

50.  As a direct and proximate result of the foregoing willful and wanton acts of Officer Mercer and others, IMPD, and the City of Indianapolis, Dreasjon Ire Reed died on May 6, 2020.

51.  Plaintiff Wynn as Personal Representative of the Estate of Dreasjon Ire Reed, deceased, brings this action on behalf of the beneficiaries of the Estate of Dreasjon Ire Reed, all of whom have suffered and will continue to suffer pecuniary loss, emotional distress, and loss of love and companionship as a result of the death of Dreasjon Ire Reed.

52.  The individual defendants' actions were the proximate cause of Decedent's great bodily harm and death, as well as Decedent's great pain and suffering.

53.  As a result, the Estate of Reed has incurred medical, funeral, burial, and other expenses, and suffered other injuries, including loss of society and companionship.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory and punitive damages, plus costs and any and all other relief that this Court deems just, fair, necessary, and proper.

## COUNT IV

### Intentional Infliction of Emotional Distress

54.  Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

55.   After the shooting death of Dreasjon Ire Reed, Officer Scott announced in public forum to millions of listeners including Wynn that Dreasjon Ire Reed's body was so mangled that he would have to be buried in a closed casket.  The conduct of the Defendants and each of them was intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of Wynn and constitutes despicable conduct, by reason thereof, Wynn  demands exemplary or punitive damages against Defendants and each of them in an amount appropriate to punish them and deter them and others from such conduct in the future.

**WHEREFORE,** Plaintiff demands judgment against Defendants for compensatory and punitive damages, plus costs and any and all other relief that this Court deems just, fair, necessary, and proper.

## COUNT V

15

## Negligent Infliction of Emotional Distress

56.  Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

57.  In doing each and all of the acts alleged herein, Defendants engaged in a course of conduct which was grossly negligent, extreme, and outrageous.  Defendants engaged in said conduct with wanton and reckless disregard of the consequences or harm or injury that might result to Wynn.

58.  Defendants, despite knowledge and adequate opportunity to learn of the misconduct of their agents and employees, adopted, approved, and ratified the acts, omissions, and misconduct of their agents and employees.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages, plus costs and any and all other relief that this Court deems just, fair, necessary, and proper.

## COUNT VI -- 42 U.S.C. § 1983

## Denial of Medical Attention

59.  Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

60.  As described more fully above, after Officer Mercer deployed and struck Reed with an ECD, Reed fell on the ground and began to convulse.  Rather than seeking medical care for Reed, Officer Mercer fired several shots at Reed, thereby denying Reed necessary medical attention and causing him undue pain and suffering.

61.  The conduct of the Officer Mercer was objectively unreasonable, and he was deliberately indifferent to Reed's objectively serious medical needs.

As a result of the Individual Defendants' objectively unreasonable conduct and deliberate indifference to Reed's necessary medical needs, the Estate of Reed suffered damages, including but not limited to pain and suffering and mental distress.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages, plus costs and any and all other relief that this Court deems just, fair, necessary, and proper.

## COUNT VII

## Vicarious Liability – Respondeat Superior

62.  Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

63.  At all times material in this cause of action, Chief Taylor, Chief Adams, Officer Mercer, and Officer Scott and others, were agents of the City of Indianapolis and IMPD respectively and were at such time acting within the full course, scope and authority of their respective positions as police officers therefore imputing liability to the City of Indianapolis and IMPD for their conduct and resulting damages outlined above under the principles of *respondeat superior,* the law of agency, the laws of the State of Indiana, as applicable.  Wynn is, therefore, entitled to general, compensatory, and punitive damages from all defendants.

**WHEREFORE**, Plaintiff demands judgment against Defendants for compensatory and punitive damages, plus costs and any and all other relief that this Court deems just, fair, necessary, and proper.

## COUNT VIII

## Indemnification Claim

64.  Plaintiff incorporates by reference as though fully set forth hereinafter, paragraphs 1 through 41 of this Complaint.

65.  The City of Indianapolis and IMPD were the employers of Chief Taylor, Chief Adams, Officer Mercer, and Officer Scott, all of whom were involved in the fatal shooting of Dreasjon Ire Reed and whom are at all times relevant to the allegations contained in this Complaint.

66.  Chief Taylor, Chief Adams, Officer Mercer, and Officer Scott were all involved in the events described in this Complaint committed the acts alleged in this Complaint in the scope of their employment with IMPD and the City of Indianapolis.

67.  The City of Indianapolis and IMPD should indemnify Chief Taylor, Chief Adams, Officer Mercer and Officer Scott, and any other IMPD police officer involved in the events described in this Complaint pursuant to Indiana law providing for indemnification of a public entity's employees.

**WHEREFORE**, Plaintiff demands judgment against the City of Indianapolis and the IMPD for compensatory and punitive damages, plus costs and any and all other relief that this Court deems just, fair, necessary and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil

Procedure 38(b) on all issues so triable.


Respectfully submitted,

***/s/Swaray Edward Conteh***
Swaray Edward Conteh, Atty.#18856-49

The Law Firm of Fatima Johnson
3737 North Meridian Street, Suite 106
Indianapolis, Indiana 46208
Tel: (317) 455-6829
Contehlaw@att.net

Attorney for Plaintiff