UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMETREE WYNN, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | 1:20-cv-1638-JMS-MJD |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| INDIANAPOLIS METROPOLITAN POLICE | ) | |
| DEPARTMENT, RANDAL TAYLOR, KENDALE | ) | |
| ADAMS, DE'JOURE MARQUISE MERCER, and | ) | |
| STEVEN SCOTT, | ) | |
| | ) | |
| *Defendants.* | ) | |

## ORDER

Plaintiff Demetree Wynn files this action following the fatal shooting of her son, Dreasjon Ire Reed.  Ms. Wynn, individually, as the mother of Mr. Reed, and as the personal representative of the Estate of Mr. Reed, asserts various claims under federal and state law against Defendants the City of Indianapolis ("the City"), the Indianapolis Metropolitan Police Department ("IMPD"), IMPD Chief Randal Taylor, IMPD Deputy Chief Kendale Adams, IMPD Officer De'Joure Marquise Mercer, and IMPD Officer Steven Scott in connection with Mr. Reed's death.  Defendants have filed a Partial Motion to Dismiss, [Filing No. 15], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007)).  In

reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations contained in the Complaint, which, consistent with the standard of review articulated above, the Court must accept as true for purposes of deciding the Partial Motion to Dismiss.

At approximately 6:00 p.m. on May 6, 2020, Mr. Reed was driving a gray Toyota Corolla on Interstate 65 near West 30th Street in Indianapolis. [Filing No. 1 at 5.] According to the information provided by IMPD Assistant Chief Chris Bailey to the news media, Deputy Chief Adams was also driving on Interstate 65, in an unmarked vehicle, and observed the Corolla "being driven recklessly as the driver exited the highway." [Filing No. 1 at 5.] Assistant Chief Bailey further stated to the media that Chief Taylor was also driving on the same highway, just

behind Deputy Chief Adams.  [Filing No. 1 at 6.]  Deputy Chief Adams called for backup as he and Chief Taylor began to pursue the Corolla.  [Filing No. 1 at 6.]  "According to a subsequent but unsubstantiated police press statement, the driver of the Toyota Corolla almost struck another car."  [Filing No. 1 at 6.]  At some point, Mr. Reed realized that he was being pursued by the police, and he positioned the camera on his cellular phone and activated his Facebook account to begin live streaming the pursuit.  [Filing No. 1 at 6.]

According to information provided to the press by Assistant Chief Bailey, after ten minutes, a police sergeant ordered that the pursuit of the Corolla be terminated because of the speed at which the Corolla was travelling.  [Filing No. 1 at 7.]  For a moment, Mr. Reed believed that the police were no longer following his vehicle.  [Filing No. 1 at 7.]  However, as he approached West 62nd Street heading south on North Michigan Road, he noticed that the police were still pursuing him and decided to park the car at the back of a building and flee on foot.  [Filing No. 1 at 7.]

Officer Mercer came upon the parked Corolla and continued to pursue Mr. Reed on foot.  [Filing No. 1 at 7.]  Seconds after Mr. Reed began running, Officer Mercer deployed his electronic control device ("ECD"), also known as a taser, and struck Mr. Reed.  [Filing No. 1 at 5; Filing No. 1 at 7.]  Mr. Reed fell to the ground and began to convulse, and Officer Mercer immediately began firing multiple shots with his firearm at Mr. Reed.  [Filing No. 1 at 7.]  Mr. Reed was struck and died instantly.  [Filing No. 1 at 7.]  At no time prior to shooting Mr. Reed did Officer Mercer command Mr. Reed to drop a weapon or warn Mr. Reed that he (Officer Mercer) was going to shoot.  [Filing No. 1 at 7.]  None of the other police officers involved in the chase did anything to intervene or prevent the fatal shooting of Mr. Reed.  [Filing No. 1 at 7.]

The Facebook live recording captured the sounds of the shooting and the conversations of the police officers that occurred immediately thereafter. [Filing No. 1 at 7.] Unaware that their conversation was being recorded, and in response to viewing the wounds on Mr. Reed's body, Officer Scott remarked, "I think it's going to be a closed casket, homie." [Filing No. 1 at 7-8.] Shortly thereafter, the officers became aware that their conversations were being recorded, and at that point they "began to formulate a theory about what transpired just prior to the fatal shooting," which "was contrary to the objective evidence." [Filing No. 1 at 8.]

The Complaint alleges that the City "has a longstanding record of not providing IMPD officers with adequate training and not preventing excessive use of force against racial minorities," including "the failure to provide meaningful training and supervision regarding the use of non-lethal force and the use of deadly force, such as force used against people fleeing from police officers; inadequate post-incident review; and a lack of meaningful discipline for excessive force, including the use of unjustified deadly force." [Filing No. 1 at 8.] Specifically, Ms. Wynn alleges that the IMPD failed to provide: (1) adequate training to Officer Mercer and other officers concerning the use of ECDs and the use of deadly force; and (2) adequate training to Chief Taylor, Deputy Chief Adams, Officer Mercer, and others concerning the appropriate methods and techniques for initiating and terminating vehicle pursuits and foot pursuits. [Filing No. 1 at 10.]

Ms. Wynn asserts various claims, organized into eight counts. At the outset, the Court notes that Ms. Wynn does not specify against which Defendant(s) each claim is asserted and seeks judgment "against Defendants"—presumably, all Defendants—with respect to each count. [Filing No. 1 at 10-18.] Ms. Wynn also uses vague phrases referencing the conduct of "Officer Mercer and others" or "the Defendants' misconduct." This practice is imprecise and unhelpful.

4

Nevertheless, the Court has done its best to determine which claims are lodged against which Defendants and, where appropriate, considers the claim to be asserted against all Defendants.

In Count I, "Violation of 42 U.S.C. § 1983 (Excessive Use of Force)," Ms. Wynn alleges that "[t]he actions of the Defendant Officer Mercer and others in fatally shooting Dreasjon Ire Reed, without just cause, constituted the use of excessive force" in violation of Mr. Reed's Fourth Amendment rights. [Filing No. 1 at 11.] Ms. Wynn further alleges that this misconduct was undertaken pursuant to policies and practices of the City and the IMPD, pursuant to which those entities encourage, facilitate, condone, and fail to remedy uses of excessive force. [Filing No. 1 at 11-13.] The Court interprets this count to assert claims against all individual Defendants and against the City and the IMPD under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) (establishing municipal liability under § 1983 for constitutional violations caused by the municipality's official policy or custom), related to the use of excessive force.

In Count II, "Violation of 42 U.S.C. § 1983 (Failure to Train)," Ms. Wynn alleges that "Officer Mercer and other police officers at the scene of the shooting incident were acting under color of law and acting pursuant to the customs practices and policies of the City of Indianapolis and IMPD with regards to the use of deadly force as authorized and/or ratified by the City of Indianapolis and IMPD." [Filing No. 1 at 13.] Ms. Wynn further alleges that the City and the IMPD failed to provide proper training regarding the use of deadly force and proper procedures for handling suspects during vehicle and foot pursuits. [Filing No. 1 at 13-14.] The Court interprets this count to assert a *Monell* claim against the City and the IMPD related to the failure to properly train their employees.

In Count III, "State Law Wrongful Death Claim; Intentional or Reckless Battery," Ms. Wynn alleges that Mr. Reed died "[a]s a direct and proximate result of the foregoing willful and

5

wanton acts of Officer Mercer and others, IMPD, and the City." [Filing No. 1 at 14.] She further alleges that "[t]he individual defendants' actions were the proximate cause of [Mr. Reed]'s great bodily harm and death, as well as [Mr. Reed]'s great pain and suffering." [Filing No. 1 at 14.] The Court interprets this count to assert claims for battery against Officer Mercer, the City, and the IMPD only, and wrongful death against all Defendants.

In Count IV, "Intentional Infliction of Emotional Distress" ("IIED"), Ms. Wynn references the comment made by Officer Scott following the shooting of Mr. Reed, and alleges that "[t]he conduct of the Defendants and each of them was intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of [Ms.] Wynn and constitutes despicable conduct." [Filing No. 1 at 15.] Because only Officer Scott's conduct is mentioned specifically as the cause of emotional harm, the Court interprets this count to assert and IIED claim against Officer Scott, the City, and the IMPD, but not against any of the other individual Defendants.

In Count V, "Negligent Infliction of Emotional Distress" ("NIED"), Ms. Wynn alleges: "In doing each and all of the acts alleged herein, Defendants engaged in a course of conduct which was grossly negligent, extreme, and outrageous. Defendants engaged in said conduct with wanton and reckless disregard of the consequences or harm or injury that might result to [Ms.] Wynn." [Filing No. 1 at 16.] She further alleges that "Defendants, despite knowledge and adequate opportunity to learn of the misconduct of their agents and employees, adopted, approved, and ratified the acts, omissions, and misconduct of their agents and employees." [Filing No. 1 at 16.] The Court interprets this count to assert an NIED claim against all Defendants.

In Count VI, "42 U.S.C. § 1983 Denial of Medical Attention," Ms. Wynn alleges that after Officer Mercer deployed his ECD against Mr. Reed, "[r]ather than seeking medical care for

[Mr.] Reed, Officer Mercer fired several shots at [Mr.] Reed, thereby denying [Mr.] Reed necessary medical attention and causing him undue pain and suffering." [Filing No. 1 at 16-17.] The Court interprets this count as asserting a claim only against Officer Mercer.

In Count VII, "Vicarious Liability – Respondeat Superior," Ms. Wynn alleges that, at all relevant times, Chief Taylor, Deputy Chief Adams, Officer Mercer, Officer Scott, "and others" were acting within the scope of their employment and as agents of the City and the IMPD. [Filing No. 1 at 17.] Accordingly, Ms. Wynn alleges, liability is imputed to the City and the IMPD "under the principles of *respondeat superior*, the law of agency, [and] the laws of the State of Indiana, as applicable." [Filing No. 1 at 17.] Given that the Court has interpreted each of Ms. Wynn's state law claims as being asserted against the City and the IMPD, that Ms. Wynn has asserted *Monell* claims against the City and the IMPD for the alleged federal constitutional violations, and that there is no vicarious employer liability for claims under § 1983, *see Monell*, 436 U.S. at 694 (stating that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"), the Court concludes that Count VIII is duplicative of the other counts. Accordingly, Count VII is **DISMISSED without prejudice** as duplicative.

Finally, in Count VIII, "Indemnification Claim," Ms. Wynn alleges that Chief Taylor, Deputy Chief Adams, Officer Reed, and Officer Scott were at all relevant times acting within the scope of their employment, and therefore the City and the IMPD should indemnify them. [Filing No. 1 at 18.] The Court interprets this count to assert claims against the City and the IMPD only.

Defendants collectively filed a Partial Motion to Dismiss, seeking to dismiss all claims against the IMPD; all claims against Chief Taylor, Deputy Chief Adams, and Officer Scott; the wrongful death claim; the IIED claim; the NIED claim; the *respondeat superior* claim; and the indemnification claim. [Filing No. 15.] Defendants assert that the indemnification claim should

7

be dismissed without prejudice, but the other claims should be dismissed with prejudice.  [Filing No. 15 at 1-2.]

### III.
### DISCUSSION

#### A.  Claims Against the IMPD

Defendants argue that the IMPD is not a suable entity, and therefore all claims against it must be dismissed.  [Filing No. 16 at 3.]  Specifically, Defendants assert that although municipal corporations have the capacity to sue and be sued under Indiana law, their individual departments and agencies do not, and courts have consistently recognized that the IMPD is not suable except in the context of lawsuits for access to public records, which is not the case here. [Filing No. 16 at 3-4.]

In response, Ms. Wynn acknowledges that "[c]ourts generally support the defendants' argument in this regard."  [Filing No. 20 at 14.]  Ms. Wynn summarizes Indiana law regarding municipal corporations and states, "[a]lthough the IMPD is a substantially autonomous agency of the city, Plaintiff has not found an instance where the courts have allowed a lawsuit to proceed against the IMPD as an agency of the State of Indiana."  [Filing No. 20 at 7.]

Defendants did not file a reply.

Ms. Wynn essentially concedes that that the IMPD is not a suable entity.  Moreover, the Court observes that local government liability is dependent upon an analysis of state law, and the Seventh Circuit Court of Appeals has expressly stated that "the Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (affirming the district court's holding that the McCordsville, Indiana Police Department and the Fortville, Indiana Police Department are not suable entities). *See also Perry v. Thomas*, 2011 WL 693622, at *4 (S.D. Ind. Feb. 18, 2011)

8

(concluding that "[t]he IMPD is not a suable entity and thus not a proper party" to an action asserting claims under § 1983 and Indiana law, and that any claims against the IMPD or officers in their official capacities "are necessarily asserted against the City of Indianapolis and are understood as such").

The IMPD is not a suable entity in this context, and therefore is not a proper party to this action. Accordingly, Defendants' Partial Motion to Dismiss is **GRANTED** to the extent that all claims against the IMPD are **dismissed** and the IMPD is **terminated** as a party.

### B. Excessive Force Under § 1983

Defendants argue that Ms. Wynn has failed to state a § 1983 claim for excessive force against Chief Taylor, Deputy Chief Adams, and Officer Scott because none of those individuals were alleged to have personally participated in the alleged constitutional violation. [Filing No. 16 at 6-7.] Furthermore, Defendants assert, the Complaint does not allege that Chief Taylor, Deputy Chief Adams, or Officer Scott were present at the time of the shooting, and therefore Ms. Wynn has not stated any potential claims against them for failure to intervene to prevent Officer Mercer's alleged use of excessive force. [Filing No. 16 at 7.]

In response, Ms. Wynn argues that responsibility for Mr. Reed's death "rests squarely on the shoulders of these named police officers." [Filing No. 20 at 13.] Ms. Wynn points to allegations in the Complaint that Officer Mercer's use of excessive force was the result of a policy or custom of the IMPD and the City, that Chief Taylor and Deputy Chief Adams initiated the pursuit of Mr. Reed and ignored the order to stop, and that they were not properly trained on how to initiate or terminate vehicle pursuits. [Filing No. 20 at 12-13.]

Individual liability pursuant to § 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)

(quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)); *see also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault.  An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).  In order for a supervisor to be liable under § 1983 for the conduct of his subordinates, the supervisor must be personally involved in the conduct or "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

"In certain cases liability under § 1983 may exist when one state actor fails to intervene to prevent another state actor from causing direct harm to a victim.  Just such a case can exist when one law enforcement officer has reason to know 'that any constitutional violation has been committed by [another] law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.'" *Windle v. City of Marion, Ind.*, 321 F.3d 658, 663 (7th Cir. 2003) (alteration in original) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Here, although Ms. Wynn asserts her claim for excessive force against all Defendants, the only act of force she refers to in the Complaint is the fatal shooting of Mr. Reed, and potentially the use of an ECD, by Officer Mercer.  She does not allege that Chief Taylor, Deputy Chief Adams, or Officer Scott participated in the shooting or were present at the scene when the shooting occurred.  Accordingly, Ms. Wynn has not stated a claim for excessive force under § 1983 against Chief Taylor, Deputy Chief Adams, or Officer Scott, and Defendants' Partial

Motion to Dismiss is **GRANTED** to the extent that the excessive force claims against those individuals are dismissed.  The excessive force claims **shall proceed** against Officer Mercer individually and against the City under *Monell*.

### C.  State Law Claims

#### 1.  *The Parties' Arguments*

Defendants argue that, pursuant to the Indiana Tort Claims Act ("ITCA"), they are immune from liability for Ms. Wynn's state law claims for IIED, NIED, and wrongful death. [Filing No. 16 at 4-5.]  They assert that Ms. Wynn has alleged that Officers Mercer and Scott were acting within the course and scope of their employment, and therefore the ITCA immunizes them from these claims.  [Filing No. 16 at 5.]  Defendants further argue, without elaboration, that "under the same analysis, the City is not liable under a theory of respondeat superior for these claims." [Filing No. 16 at 5.]

Defendants also argue that Ms. Wynn's IIED claim fails as a matter of law because she has not alleged that Officer Scott acted with an intent to harm.  [Filing No. 16 at 6.]  Because the Complaint alleges that the officers did not know that they were being recorded or streamed on Facebook, Defendants assert, Officer Scott had no knowledge that Ms. Wynn would hear his remark and therefore could not have intended to harm her.  [Filing No. 6 at 16.]

In response, Ms. Wynn argues that because Defendants denied in their Answer that Chief Taylor and Deputy Chief Adams were acting within the scope of their employment when they initiated the pursuit that led to the death of Mr. Reed, Defendants cannot now assert that the ITCA shields them from liability.  [Filing No. 20 at 9.]  Ms. Wynn asserts that Defendants' argument as to Officers Mercer and Scott "ignores the fact that the police involved in the shooting death of [Mr.] Reed were named in their individual and official capacities." [Filing No.

11

20 at 9.] Ms. Wynn argues that Defendants rely upon "cases that do not address the ITCA, but rather general immunity." [Filing No. 20 at 10.] She further asserts that Defendants do not explain how they are not liable under a theory of *respondeat superior*. [Filing No. 20 at 10.] Because "[t]here is potential in this case that Officer Mercer and possibly other police officers will be criminally prosecuted," Ms. Wynn argues, "[i]t is without question that liability can be imposed upon the city of Indianapolis under *respondeat superior* for the tortious or criminal acts of its employees." [Filing No. 20 at 10.] Ms. Wynn also argues that Indiana law does not provide blanket immunity to police officers engaged in law enforcement activities. [Filing No. 20 at 14.]

Regarding the IIED claim, Ms. Wynn asserts that "[i]t is true that Officer Scott may not have been unaware (sic) that Reed's telephone was capturing his conversation with the other police officers present. However, his utterance was reckless and done with callous disregard for human life." [Filing No. 20 at 11.] She argues that because Officer Scott was speaking in an open area and given the ubiquity of recording devices in modern society, he should have known that there was a high probability that Ms. Wynn and others would hear his remarks. [Filing No. 20 at 12.]

##### 2. *Immunity Principles Under the ITCA*

The ITCA, Ind. Code § 34-13-3-1 *et. seq.*, governs state law tort claims against governmental entities and public employees. *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). "Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment." *Id.* Specifically, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d

636, 645 (7th Cir. 2014) ("Under the [ITCA], there is no remedy against the individual employee so long as he was acting within the scope of his employment.").

In addition, the law enforcement immunity provision of the ITCA provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8)(A). In determining whether this provision immunizes a police officer's conduct, a court must determine whether: (1) the officer was acting within the scope of his employment when the injury to plaintiff occurred; and (2) whether the officer was engaged in the enforcement of a law at that time. *Snyder v. Smith*, 7 F. Supp. 3d 842, 874 (S.D. Ind. 2014) (citing *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010)).

The Indiana Supreme Court has recognized, however, that police conduct that breaches an independent statutory duty is not immunized by the law enforcement provision of the ITCA. *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010) (discussing *Patrick v. Miresso*, 848 N.E.2d 1083 (Ind. 2006)). For example, because Ind. Code § 35-41-3-3(b)[1] limits police officers to using only force that is reasonable, an officer's conduct will not be shielded from liability if he uses excessive or unreasonable force. *Wilson*, 929 N.E.2d at 203-04 ("[T]he statutory provision [concerning the reasonable use of force] restrains the statutory immunity from erecting a shield to liability for conduct contrary to the [use of force] statute."). To determine whether a claim is

---

[1] This provision states that a "law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest" and limits the use of deadly force to circumstances in which the officer (1) "has probable cause to believe that deadly force is necessary" to prevent the commission of a forcible felony or to arrest a person who the officer has probable cause to believe "poses a threat of serious bodily injury to the officer or a third person" and (2) has given a warning, if feasible, that deadly force will be used. Ind. Code § 35-41-3-3(b).

barred by law enforcement immunity, courts must look to the conduct forming the foundation of the claim, rather than relying on the legal theory upon which the claim is based.  *See Bowens v. City of Indianapolis*, 2014 WL 4680662, at *7 (S.D. Ind. Sept. 19, 2014) ("[I]mmunities afforded governmental defendants focus not on legal theories but on *conduct*. The court must therefore focus on whether the alleged *conduct* is immunized under the law enforcement immunity provision at Ind. Code § 34-13-3-3(8), not whether the immunity applies to a particular legal theory." (emphasis in original)).  If conduct constituting excessive force is the foundation of the tort claim, the claim is not barred by the law enforcement immunity provision. *See id.* ("Because the alleged excessive force is the foundation of [plaintiff's] emotional distress claims and because excessive force is not immunized conduct, the court rejects the City's argument that it is immunized by the [ITCA] against the claims for negligent and intentional infliction of emotional distress."); *Todero v. Blackwell*, 383 F. Supp. 3d 826, 842 (S.D. Ind. 2019) ("Similarly here, [plaintiff] alleges that in using excessive force, [the officers] intentionally inflicted emotional distress, so section 34-13-3-3(8) immunity does not apply.").[2]

### 3.  *Claims Against Officers Mercer and Scott*

The Complaint expressly alleges that Officers Mercer and Scott were acting within the scope of their employment at all relevant times.  [Filing No. 1 at 4.]  Accordingly, they cannot be

---

[2] As the Court in *Bowens* acknowledged, there are "several decisions from this district and the Northern District of Indiana in which the courts concluded that the [ITCA] does provide immunity against emotional distress torts." 2014 WL 4680662, at *6 (citing a collection of cases relying on *Parish v. City of Elkhart*, 2010 WL 4054271 (N.D. Ind. Oct. 15, 2010)).  This Court agrees that those cases stand for the proposition that, consistent with *Wilson*, the law enforcement immunity provision bars claims concerning emotional distress torts that are not based on conduct prohibited by Indiana's statute concerning officers' use of force. *See Bowens*, 2014 WL 4680662, at *6 (noting that in *Parish*, the plaintiff brought an IIED claim based on conduct he alleged amounted to malicious prosecution).

held personally liable for Ms. Wynn's state law claims for IIED, NIED, or wrongful death.[3] Ind. Code § 34-13-3-5(b); *see also City of Gary v. Conat*, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004) ("[The Indiana] supreme court recently decided that I.C. § 34-13-3-5(b) should be interpreted as standing for the proposition that a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment." (citing *Bushong*, 790 N.E.2d at 471)). Defendants' Partial Motion to Dismiss is therefore **GRANTED** to the extent that Ms. Wynn's state law claims for NIED, IIED, and wrongful death against Officers Mercer and Scott are **dismissed**.[4]

### 4. *Claims Against Chief Taylor and Deputy Chief Adams*

#### a. Immunity

The Complaint alleges that Chief Taylor and Deputy Chief Adams were acting within the scope of their employment at all times relevant to this lawsuit. [Filing No. 1 at 4.] However, Defendants expressly deny this allegation in their Answer, [Filing No. 17 at 3], but simultaneously argue that Defendants are immune because they were acting within the scope of their employment, [Filing No. 16 at 4-5]. Although the Court generally does not consider a defendant's answer in ruling on a Rule 12(b)(6) motion to dismiss, that does not permit

---

[3] Defendants did not move to dismiss Ms. Wynn's state law battery claim against Officer Mercer individually. [Filing No. 16 at 2.]

[4] Contrary to Ms. Wynn's argument, the fact that the officers were sued in both their individual and official capacities does not change the result. As Ms. Wynn acknowledges, "personal-capacity suits seek to impose personal liability on a government official," [Filing No. 20 at 9 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))], and as explained above, Ms. Wynn cannot impose personal liability on the officers in this context. Ms. Wynn also acknowledges that "[o]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" [Filing No. 20 at 9 (quoting *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 381 (7th Cir. 1988)).] In doing so, she appears to recognize that the proper defendant in connection with her state law claims against these officers is the City, not the individual officers.

Defendants to take one position their Partial Motion to Dismiss and the opposite position in the Answer. The Court will hold Defendants to their pleading. *See Ocasio v. Turner*, 19 F. Supp. 3d 841, 860-61 (N.D. Ind. 2014) ("If a plaintiff alleges that an employee was acting within the scope of his employment, . . . the plaintiff is barred from bringing a state law tort claim against the employee personally *unless the governmental entity answers that the employee was acting outside the scope of his employment*." (emphasis added)). Given Defendants' denial of Ms. Wynn's allegations, the Court concludes that the question of whether Chief Taylor and Deputy Chief Adams were acting within the scope of their employment—and, by extension, whether they are immunized from personal liability for the state law claims—should be reserved for a later stage in the litigation, when the Court will have the benefit of factual development. *See Bushong*, 790 N.E.2d at 473 ("Generally, whether the tortious act of an employee is within the scope of employment is a question of fact."). Accordingly, Defendants' Partial Motion to Dismiss is **DENIED** to the extent that it seeks to dismiss the state law claims against Chief Taylor and Deputy Chief Adams on immunity grounds. This ruling, however, is without prejudice to Defendants' ability to assert a properly supported immunity defense at a later stage.

      b.  <u>Sufficiency of the Allegations Against Chief Taylor and Deputy Chief Adams</u>

Defendants also assert, without elaboration, that the Complaint "does not allege that Chief Taylor and Deputy Chief Adams engaged in any tortious conduct" and instead "merely indicates that they were the first officers to encounter [Mr.] Reed." [Filing No. 16 at 7.] Defendants argue that, because "Chief Taylor and Deputy Chief Adams may not be held liable for their actions in enforcing the law under Indiana law," they cannot be held liable for any of Ms. Wynn's state law claims. [Filing No. 16 at 7-8.]

Ms. Wynn does not specifically address this argument, as it relates to the sufficiency of the state law claims independent of the immunity issue, in her response. [*See* Filing No. 20 at 13-14 (arguing in a section titled "Whether Chief Taylor and Deputy Chief Adams are not alleged to have engaged in any tortious conduct" that: (1) "a claimant may impose personal liability on a government official under § 1983 by demonstrating that the official, acting under color of state law, caused the deprivation of a federal right"; and (2) "Indiana law does not provide blanket immunity to police officers engaged in the execution of Indiana law").]

As stated above, the Court will not grant immunity to Chief Taylor and Deputy Chief Adam at this juncture, given that Defendants deny in their Answer that Chief Taylor and Deputy Chief Adams were acting within the scope of their employment. Accordingly, the Court will consider whether the allegations in the Complaint are sufficient to state claims against Chief Taylor and Deputy Chief Adams for wrongful death and NIED under Indiana law, disregarding any potential immunity defense.

### i. Wrongful Death

Pursuant to Indiana's wrongful death statute, the personal representative of the decedent may maintain an action for wrongful death against a defendant "[w]hen the death of [the decedent] is caused by the wrongful act or omission of [the defendant]." Ind. Code § 34-23-1-1. The Complaint alleges that by initiating the vehicle pursuit and ignoring orders to stop the pursuit, Chief Taylor and Deputy Chief Adams caused Mr. Reed's death. Defendants did not raise or develop any specific argument as to why these allegations are insufficient to state a claim for wrongful death. *See Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments."). The Court concludes that Ms. Wynn's allegations meet the minimum requirements of notice pleading, and therefore

Defendants' Partial Motion to Dismiss is **DENIED** as to the wrongful death claim against Chief Taylor and Deputy Chief Adams, which **shall proceed**.

### ii.  NIED

In order to state a claim for NIED, a plaintiff who did not herself suffer a direct impact must satisfy the requirements of the bystander rule. *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011).  Under this rule, the plaintiff must "establish 'direct involvement' by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous conduct." *Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind. 2000).

Ms. Wynn alleges that Chief Taylor and Deputy Chief Adams's commencement of and participation in the vehicle chase, and failure to terminate the chase when it was called off—all of which were viewable to others on Facebook—were negligent, caused Mr. Reed's death, and caused emotional distress to Ms. Wynn.  Again, Defendants did not raise or develop any specific argument as to why these allegations are insufficient to state a claim for NIED. *See Draper*, 664 F.3d at 1114.  The Court concludes that Ms. Wynn's allegations meet the minimum requirements of notice pleading, and therefore Defendants' Partial Motion to dismiss is **DENIED** as to the NIED claim against Chief Taylor and Deputy Chief Adams, which **shall proceed**.

### 5.  *Claims Against the City*

It is well settled in Indiana that, under the doctrine of *respondeat superior*, an employer is vicariously liable for an employee's tortious conduct if that conduct occurred within the scope of employment. *E.g.*, *Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 460 (Ind. 2018).  As noted above, Ms. Wynn alleges in her Complaint that Officers Mercer and Scott were acting within the

scope of their employment at all relevant times and therefore claims based on their conduct are properly asserted against the City.[5]   The Court will next consider whether and to what extent each of the claims against the City are barred by law enforcement immunity.

      a.   <u>Wrongful Death</u>

Regarding the wrongful death claim, the Complaint alleges that Officer Mercer used excessive force against Mr. Reed by fatally shooting him and that this force resulted in Mr. Reed's wrongful death.   [Filing No. 1 at 2; Filing No. 1 at 10-11; Filing No. 1 at 14-15.]   Because Indiana law prohibits the use of excessive force and prohibits the use of deadly force unless certain circumstances are present, Ind. Code Ann. § 35-41-3-3(b), the law enforcement immunity provision does not apply to a wrongful death claim premised on the use of excessive force for the reasons articulated by the Indiana Supreme Court in *Wilson*, 929 N.E.2d at 203.   Specifically, because the conduct forming the basis of the wrongful death claim is also conduct that is alleged to amount to the excessive use of force, the law enforcement immunity provision does not shield the City from liability.   *See Bowens*, 2014 WL 4680662, at *7; *Todero*, 383 F. Supp. 3d at 842. Thus, Defendants' Partial Motion to Dismiss is **DENIED** to the extent that it seeks dismissal of the wrongful death claim against the City based on law enforcement immunity.[6]

---

[5] With respect to the claims against the City, the Court need not decide whether to credit Ms. Wynn's allegations that Chief Taylor and Deputy Chief Adams were also acting within the scope of employment or to hold Defendants to their denial of that allegation.  Neither Chief Taylor nor Deputy Chief Adams are named in the IIED claim, and as illustrated below, the claims for wrongful death and NIED may proceed based on consideration of only Officer Mercer's conduct. Nothing in this Order shall prevent these claims from encompassing Chief Taylor's and Deputy Chief Adams's conduct if it is later determined that such conduct occurred within the scope of their employment and is not otherwise immunized.  However, at this juncture, it is sufficient to conclude that the claims against the City can proceed even without considering Chief Taylor's and Deputy Chief Adams's actions.

[6] Defendants cite *Day v. City of Indianapolis*, 380 F. Supp. 3d 812, 829 (S.D. Ind. 2019), *rev'd and remanded on other grounds sub nom. Day v. Wooten*, 947 F.3d 453 (7th Cir. 2020), for the proposition that the law enforcement immunity provision protects municipalities from wrongful

### b.  IIED

As for the IIED claim, the Complaint specifically references Officer Scott's remark about a "closed casket," [Filing No. 1 at 15], and Ms. Wynn's response to Defendants' Partial Motion to Dismiss focuses only on Officer Scott's comment, [*see* Filing No. 20].  Because Ms. Wynn alleges that Officer Scott was acting within the scope of his employment when he made the comment in question, and because his utterance does not constitute the use of excessive force or violate any other identified Indiana statute, Ms. Wynn's IIED claim is barred by law enforcement immunity.  *See Parish v. City of Elkhart*, 2010 WL 4054271, at *4 (N.D. Ind. Oct. 15, 2010) (applying law enforcement immunity where the plaintiff was "not arguing that the City of Elkhart violated any statute in connection with the IIED claim").  Defendants' Partial Motion to Dismiss is therefore **GRANTED** to the extent that the IIED claim against the City is dismissed.[7]

### c.  NIED

Ms. Wynn alleges that the individual Defendants were negligent in initiating the pursuit, continuing the pursuit, and ultimately shooting Mr. Reed, which resulted in Mr. Reed's death. [Filing No. 1 at 16.]  To the extent that this claim is based upon conduct allegedly constituting excessive force, it is not barred by the law enforcement immunity provision.  *See Bowens*, 2014

---

death claims.  There are certainly circumstances in which that proposition is true.  However, in *Day*, the plaintiff estate's wrongful death claim alleged that the defendant police officers and the City of Indianapolis were negligent in caring for the decedent, resulting in his death; the estate did not allege that excessive force or another violation of Indiana statute by the officers caused the death.  380 F. Supp. 3d at 828.  *Day* is therefore distinguishable from the facts of this case.

[7] Although Ms. Wynn's IIED claim is barred by the law enforcement immunity provision and the Court therefore need not address the other issues raised by Defendants, such as whether the allegations establish the requisite intent, the Court observes that Officer Scott's remark is precisely the type of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," such that it would meet the "rigorous" requirement for extreme and outrageous conduct necessary to state an IIED claim under Indiana law.  *Lachenman v. Stice*, 838 N.E.2d 451, 456-57 (Ind. Ct. App. 2005).

WL 4680662, at *7; *Todero*, 383 F. Supp. 3d at 842. Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of this claim based on law enforcement immunity.

### D. Indemnification Claim

Defendants argue that Ms. Wynn's indemnification claim should be dismissed without prejudice because it is not yet ripe. [Filing No. 16 at 8.] Decisions about indemnification, Defendants assert, should be postponed until liability has been established. [Filing No. 16 at 8.]

Ms. Wynn does not specifically address this issue in her response. [*See* Filing No. 20.]

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations and citation omitted). An indemnification claim is not ripe unless and until liability is established. *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010). The Seventh Circuit has made clear that the proper disposition of an unripe duty-to-indemnify claim is to dismiss it. *Id*.; *see also Humphrey v. City of Anderson*, 2020 WL 3060363, at *12 (S.D. Ind. June 8, 2020) (dismissing without prejudice as unripe a claim seeking to require the City of Anderson, Indiana to indemnify two of its police officers because the officers' liability had not yet been established).

Because liability has not been established against any Defendant in this lawsuit, Ms. Wynn's indemnification claim is not ripe. Accordingly, Defendants' Partial Motion to Dismiss is **GRANTED** to the extent that the indemnification claim is dismissed **without prejudice**.

## IV.
### CONCLUSION

Based on the foregoing, Defendants' Partial Motion to Dismiss, [15], is **GRANTED IN PART and DENIED IN PART** as follows:

- The Motion is **GRANTED** to the extent that the freestanding *respondeat superior* claim is **DISMISSED without prejudice** as duplicative;

- The Motion is **GRANTED** to the extent that all claims against the IMPD are **DISMISSED with prejudice as they are only properly asserted against the City of Indianapolis**;

- The Motion is **GRANTED** to the extent that Ms. Wynn's § 1983 excessive force claims against Chief Taylor, Deputy Chief Adams, and Officer Scott are **DISMISSED with prejudice**;

- The Motion is **GRANTED** to the extent that Ms. Wynn's state law claims for NIED, wrongful death, and IIED against Officers Mercer and Scott individually are **DISMISSED with prejudice**;

- The Motion is **DENIED** to the extent that it seeks dismissal of the NIED and wrongful death claims against Chief Taylor and Deputy Chief Adams individually based on immunity or failure to state a claim;

- The Motion is **DENIED** to the extent that it seeks dismissal of the NIED and wrongful death claims against the City based on law enforcement immunity;

- The Motion is **GRANTED** to the extent that Ms. Wynn's IIED claim in its entirety is **DISMISSED with prejudice**; and

- The Motion is **GRANTED** to the extent that Ms. Wynn's indemnification claim is **DISMISSED without prejudice as unripe**.

In addition, the Clerk is **DIRECTED** to **terminate** the Indianapolis Metropolitan Police Department and Officer Steven Scott as parties to this action.

The following claims **shall proceed**, either because Defendants did not ask the Court to dismiss them or because the Motion was denied as to these claims:

- § 1983 claim for excessive force against Officer Mercer individually and against the City under *Monell*;

- § 1983 *Monell* claim for failure to train against the City;

- Wrongful death claim against the City, Chief Taylor, and Deputy Chief Adams;

- Battery claim against Officer Mercer and the City;

- NIED claim against the City, Chief Taylor, and Deputy Chief Adams; and

- § 1983 claim for denial of medical care against Officer Mercer.


Date: 10/26/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


**Distribution via ECF only to all counsel of record**